

**SIGNED this 02nd day of April, 2012.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-60822-CAG |
| | § | |
| FRANCIS MARION JOHNSON III, and | § | CHAPTER 11 |
| JUDITH ANN JOHNSON, | § | |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| DON PARKHOUSE, and | § | |
| MARY J. PARKHOUSE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | ADV. NO. 11-06020-CAG |
| v. | § | |
| | § | |
| FRANCIS MARION JOHNSON III, | § | |
| JUDITH ANN JOHNSON, and | § | |
| LAWYERS TITLE INSURANCE | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION GRANTING JOINT MOTION TO REMAND</u>

1

Before the Court is the Joint Motion to Remand filed November 11, 2011 (docket no. 5) (the "Motion") on behalf of Debtors/Defendants, Francis and Judith Johnson ("Debtors"), and Plaintiffs, Don and Mary Parkhouse ("Plaintiffs").   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, and the matter is deemed a non-core proceeding under 28 U.S.C. § 157(c).  Venue is proper under 28 U.S.C. 1408(i).  This matter is referred to this Court under the district court's Standing Order of Reference.  A hearing was held on December 6, 2011, to consider the Motion.  The following represents the Court's findings of fact and conclusions of law made under Federal Rules of Bankruptcy Procedure 7052 and 9014. Having considered the pleadings and the record in this case, for the reasons stated below, the Court finds that the Joint Motion to Remand should be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2009, Plaintiffs filed a lawsuit in the 66th Judicial District Court of Hill County, Texas, against Debtors under Cause No. 47,672 (the "State Court Lawsuit") (*see* docket no. 14, at 1).  The Plaintiffs initiated the State Court Lawsuit after Plaintiffs bought two lots from Debtors on or about May 27, 2008 (the "Real Estate Transaction"), and an issue arose regarding a sewer line that ultimately prevented Plaintiffs from building or developing their lot (docket nos. 14, at 1-2; 23-2, at 59; 11, at 3).  Plaintiffs alleged state-law causes of action against Debtors under the Texas Deceptive Trade Practices Act,[1] Common Law Fraud/ Fraud in a Real Estate Transaction,[2] Negligence, Negligent Misrepresentation, and Breach of Contract (docket no. 23-2, at 60-62).   In Debtors' Original Answer, they denied the allegations in the complaint and asserted several affirmative defenses (*id.* at 25-26).

---

[1] TEX. BUS. & COM. CODE ANN. § 17.46(b).

[2] TEX. BUS. & COM. CODE ANN. § 27.01.

On July 28, 2011, Plaintiffs amended their petition and named Lawyers Title Insurance Company ("LTIC") as a co-defendant for denying Plaintiffs title insurance coverage under their title policy subsequent to the Real Estate Transaction (docket no. 14, at 2).  Plaintiffs alleged state-law causes of action against LTIC for Breach of Contract, Contract Damages, Bad Faith,[3] and Negligent Misrepresentation (*id.* at 62-64).  LTIC did not file any cross-action or counterclaim against Debtors or Plaintiffs in the state court (*id.*).  In LTIC's Original Answer and Request for Disclosures, they denied the allegations in the complaint and asserted several affirmative defenses, including an allegation that "Plaintiffs' claim is an exclusion from coverage as enumerated in the title insurance policy," and that "[a]ny injuries or damages alleged to have been sustained or suffered by Plaintiffs were caused in whole or in part, or were contributed to by the acts and omissions of Plaintiffs;" and of "a third person or persons over whom Defendant had no supervision or control."  (*Id.* at 51-52.)

Each cause of action that Plaintiffs asserted against Debtors and LTIC in the State Court Lawsuit is asserted under Texas law.  In addition, Plaintiffs have requested a jury trial on each of these claims (doc. 23-2, at 65).  Since the initiation of the State Court Lawsuit in October 2009, discovery has been completed, and Debtor, Frank Johnson, has been deposed (*id.*).  No trial date has been set.

On July 29, 2011, Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") (docket no. 14, at 2).  On October 25, 2011, Debtors removed the State Court Lawsuit to this Court (docket no. 1).  LTIC received notice from this Court of the deadline to file a proof of claim as well as the deadline to file a complaint to determine dischargeability under 11 U.S.C. §§ 523 or 727 (*id.*).  The deadlines have since passed, and LTIC did not file a proof of claim or a dischargeability complaint.

---

[3] TEX. BUS. & COM. CODE ANN. § 41.003(a).

On November 11, 2011, Plaintiffs and Debtors filed a Joint Motion to Remand, indicating that "[o]nce the State Court Lawsuit is remanded to the District Court of Hill County, Texas, Plaintiffs will non-suit the [Debtors] and thereby settling and resolving all claims against the [Debtors]." (Docket no. 5, at 2).

On December 1, 2011, LTIC filed three documents: its Rule 12(b)(6) Motion to Dismiss, or Alternatively, Rule 12(e) Motion for a More Definite Statement, pursuant to the Federal Rules of Civil Procedure (docket no. 9); its Motion for Leave to Designate Debtors as a Responsible Third Party, pursuant to the Texas Civil Practice and Remedies Code (docket no. 10) ("Motion to Designate"); and its Objection to Joint Motion to Remand (docket no. 11).

On December 6, 2011, a hearing was held on the Joint Motion to Remand.  At the remand hearing, Debtors' counsel noted that LTIC had not filed a counterclaim or cross-action in the adversary proceeding as of that date, that the deadlines for doing so had passed, and that once Plaintiffs non-suit Debtors upon remand, only non-debtor parties will remain.  LTIC argued that remanding the case to state court would prejudice LTIC in light of Plaintiffs' plan to non-suit Debtors because the deadline to assert a claim against Debtors in bankruptcy court had passed and would similarly prevent LTIC from asserting a claim against Debtors as a third party in state court.  LTIC thus argued that if the case is remanded LTIC would be "left in the dust" with "no recourse against the Debtors."

Accordingly, LTIC argued that the Court should deny the Joint Motion for Remand or, in the alternative, grant LTIC's Motion to Designate Debtors as a third party in hopes that the designation would be binding on the state court once the matter is remanded.  A question thereby arose as to the effect and enforceability of this Court's ruling on the Motion to Designate once the proceeding is remanded.  The Court instructed that Debtors file a response to the Motion to

4

Designate by December 6, 2011, and that LTIC file a reply by December 23, 2011.  Accordingly, on December 16, 2011, Debtors filed their Response to LTIC's Motion to Designate (docket no. 14).  On December 22, 2011, LTIC filed its Reply (docket no. 16).

On December 22, 2011, LTIC also filed a Crossclaim against Debtors "for the Johnsons' proportionate liability and contribution as to the Plaintiffs' alleged damages."  (Docket no. 17, at 4.)  The Crossclaim states, in relevant part:

> In the event the trier of fact finds that LTIC is liable to Plaintiffs for damages, LTIC is entitled to have the jury consider the Johnsons' contribution and proportionate liability for Plaintiffs' injury and LTIC seeks a reduction of damages under Chapter 33 of the Texas Civil Practice and Remedies Code . . . .  LTIC prays that Plaintiffs take nothing by reason of the allegations in the above-entitled and numbered and that LTIC be dismissed and go hence without delay . . . . Alternatively, LTIC prays that in the event the Plaintiffs are awarded judgment against LTIC, the damages be proportionately reduced and that judgment be entered against the Johnsons for their contribution toward damages . . . .

(*Id.* at 5.)  On January 25, 2012, Debtors filed an Answer to the Crossclaim, asserting that "LTIC cannot pursue this claim because the Defendants have filed bankruptcy and by filing the crossclaim LTIC is attempting to collect from the Defendants."  (Docket no. 19, at 2.)

## PARTIES' CONTENTIONS AS TO THE MOTION TO REMAND

In its Objection to the Joint Motion to Remand, LTIC first argues that "core" matters "affecting the Debtors' bankruptcy proceeding" remain pending (docket no. 11, at 6).  LTIC states that "Plaintiffs' assertion against the Debtors of Common Law Fraud/ Fraud in a Real Estate Transaction is a core proceeding under 28 U.S.C. 157(b)(2)(H) as it is a proceeding to determine, avoid, or recover fraudulent conveyances."  (*Id.* at 5-6.)  Similarly, LTIC asserts that Debtors' "fraudulent act or omission . . . is a core issue under 28 U.S.C. 157(b)(2)(H)."  (*Id.* at 7.)  LTIC further argues that "these core matters as well as other non-core matters . . . are

directly related to allegations against LTIC" in that "Debtors are Responsible Third Parties as to the claims asserted by Plaintiffs against LTIC." (*Id.* at 6.) LTIC explains that, because the deadline has passed for filing an adversary complaint against debtors in this Court, "LTIC would be unfairly prejudiced if it is then not allowed to third-party the Debtors back into the underlying lawsuit . . . ." (*Id.* at 8.)

In their Response, Plaintiffs argue that the Court should remand the State Court Lawsuit for the following reasons:

> A jury demand has been made, the issues involve purely state law, there is no bankruptcy expertise required to resolve the issues, the State Court would be better able to handle issues of state law, and most importantly, once the Plaintiffs nonsuit the Debtors, the only remaining parties will be non-debtor parties.

(Docket no. 14, at 2.)

## PARTIES' CONTENTIONS AS TO THE MOTION TO DESIGNATE

In its Motion to Designate, LTIC asserts that Debtors are "responsible third parties within the meaning of the Texas Civil Practice & Remedies Code section 33.011(6) because they caused or contributed to the harm for which recovery of damages is sought by Plaintiff[s]." (Docket no. 10, at 2.) LTIC states that:

> Plaintiffs' complaint arises from alleged fraudulent representations and omissions made by the Debtors related to an underground sewer line crossing a portion of one of the lots . . . . Plaintiffs subsequently added LTIC to the lawsuit for denial of title insurance coverage which coverage determination was based in part on Debtors' judicial pleadings responsive to the allegations of fraud and misrepresentation.

(*Id.* at 2-3.) "Accordingly, the Debtors are responsible third parties as to the fraudulent acts or omissions Debtors committed which resulted in the damages Plaintiffs now seek to recover from LTIC." (*Id.* at 3.)

In their Response to the Motion to Designate, Plaintiffs argue that the Court should deny the Motion for three reasons.  First, Plaintiffs argue that Chapter 33 of the Texas Civil Practice and Remedies Code does not apply.  They assert that, by its terms, Chapter 33 only applies to a cause of action "based in tort" or "under the Deceptive Trade Practices- Consumer Protection Act."  (*Id.* at 3 (citing TEX. BUS. & COM. CODE ANN. § 33.002)).  Once Debtors are non-suited, the only remaining claims against LTIC will be breach of contract claims related to the title policy.  Second, in the alternative event the Court finds that Chapter 33 applies, Plaintiffs point out that a designation under the statute "(1) does not by itself impose liability on the person; and (2) may not be used in any other proceeding . . . to impose liability."  (*Id.* at 3-4 (citing TEX. BUS. & COM. CODE ANN. § 33.004(i))).[4]  Third, notwithstanding their last argument, Plaintiffs assert that LTIC did not "and cannot" plead sufficient facts concerning Debtors' alleged responsibility pursuant to the pleading requirements of the Texas Rules of Civil Procedure (*id.* at 4).  Plaintiffs point out once again that they plan to non-suit Debtors and, therefore, contend that there is no evidence of alleged responsibility on the part of the Debtors (*id.*).

In its Reply, LTIC first argues that Plaintiffs did bring causes of action against LTIC that are "based in tort," including claims for Bad Faith and Negligent Misrepresentation (docket no. 16, at 4).  Second, LTIC asserts that it has pleaded sufficient facts concerning Debtors' alleged responsibility to meet the "fair notice standard" under the Texas Rules of Civil Procedure (*id.* at 4-6).  Third, in the alternative, LTIC requests time to replead (*id.* at 6).

---

[4] The Court notes that Plaintiffs also state, in a somewhat confusing manner, that "if the Court finds that the Debtors should be designated as responsible third parties, the Debtors would agree to an order designating them as responsible third parties."  (Docket no. 14, at 3.)  Plaintiffs go on, however, to add that "Debtors would agree solely on the basis of the limitations of liability set forth in Section 33.004(i)."  (*Id.*)

## STANDARD ON A MOTION FOR REMAND

"Pursuant to 28 U.S.C. § 1452(b) a state court lawsuit which has been removed to bankruptcy court may be remanded on any equitable grounds." *In re Engra, Inc.*, 86 B.R. 890, 895 (S.D. Tex. 1988); *see also In re Wright*, 231 B.R. 597, 600 (Bankr. W.D. Tex. 1999); *Special Value Continuation Partners v. Jones*, 2011 WL 5593058, at *7 (Bankr. S.D. Tex. Nov. 10, 2011).[5]  In addition, pursuant to 28 U.S.C. § 1334(c)(1), the bankruptcy court "may, in its discretion, decline [i.e. abstain] from hearing the proceeding . . . . 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Special Value Continuation Partners*, 2011 WL 5593058, at *7-8 n.15 (citing 28 U.S.C. § 1334(c)(1)).[6]  "Courts have broad discretion when considering abstention or remand under these provisions . . . ."[7]  *Id.* at *8. "Courts will consider a number of specific factors in deciding whether to abstain or remand." *Id.* at *7-8; *see also In re Engra, Inc.*, 86 B.R. at 895 ("A considerable overlap exists between the factors appropriate to abstention and those appropriate to remand.") (citing *Browning v. Navarro*, 743 F.2d 1069 (5th Cir. 1984)).  These factors include:

(1) the effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention

(2) extent to which state law issues predominate over bankruptcy issues

(3) difficult or unsettled nature of applicable law

---

[5] "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b).

[6] "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1334(c)(1).

[7] "The court's refusal to abstain or remand under these sections is not reviewable on appeal."  *Sabre Techs., L.P. v. TSM Skyline Exhibits, Inc.*, 2008 WL 4330897, at *4 n.22 (S.D. Tex. Sept. 18, 2008) (citing 28 U.S.C. § 1334(d); 28 U.S.C. § 1452(b)).

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding

(5) jurisdictional basis, if any, other than § 1334

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case

(7) the substance rather than the form of an asserted core proceeding

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court

(9) the burden of the bankruptcy court's docket

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties

(11) the existence of a right to a jury trial

(12) the presence in the proceeding of nondebtors parties

(13) comity

(14) possibility of prejudice to other parties in the action

*Special Value Continuation Partners*, 2011 WL 5593058, at *7-8.

"Procedurally, a court should review the state of the pleadings as of the filing of the motion for remand," rather than "as they stood when they were later amended post-motion but prior to the hearing on the motion for remand." *In re Legal Xtranet, Inc.*, 453 B.R. 699, 703-04 (Bankr. W.D. Tex. 2011) (finding that the remand request should be evaluated without taking into account that the party amended its answer shortly before the hearing by dropping its counterclaims and asserting a defensive claim for recoupment); *In re Legal Xtranet, Inc.*, 2011 WL 3236045, at *2 (Bankr. W.D. Tex. 2011) (denying motion to reconsider order remanding adversary proceeding to state court from whence it was removed).

In this case, the Joint Motion for Remand was filed on November 20, 2011.  Like in *In re Legal Xtranet*, certain post-motion pleadings were filed subsequent to that, but shortly before the hearing, such as LTIC's Motion to Dismiss (docket no. 9) and Motion to Designate (docket no. 10), filed December 1, 2011.  Subsequent to the hearing, LTIC also filed a Counterclaim against Debtors, on December 22, 2011.  For the purpose of determining whether remand is appropriate, the Court will review the state of the pleadings as of the date the Joint Motion to Remand was filed, prior to considering the subsequent pleadings.

## ANALYSIS

"Looking at the parties' pleadings as they existed at the time of removal, the first issue to be addressed is whether the court has jurisdiction over the parties' state court proceeding and, if so, whether each cause of action asserted within that proceeding is core or non-core."  *In re Legal Xtranet, Inc.*, 453 B.R. at 704; *see also* **CBI Eastchase, L.P. v. Farris (In re e2 Commc'ns, Inc.)**, 2005 Bankr. LEXIS 3250, at *8 (Bankr. N.D. Tex. Mar. 24, 2005) (noting that before addressing the issues of abstention and equitable remand, "the first question is whether this Court has jurisdiction over the claims asserted in the State Court Action under section 1334").

### I.  The Court has only "related to" subject matter jurisdiction over this proceeding.

"A matter falls within the court's subject matter jurisdiction if the matter arises under a provision of title 11, or if the matter arises in or is related to the bankruptcy case."  *In re Legal Xtranet, Inc.*, 453 B.R. at 704.  "'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11."  *Id.* (citing *In re e2 Communications*, 2005 Bankr. LEXIS 3250, at *9-10 n.5).  In this case, Plaintiffs do not allege any cause of action

pursuant to a statutory provision of title 11. Rather, Plaintiffs allege purely state-law claims. Therefore, Court does not have "arising under" jurisdiction.

"'Arising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy." *Id.* Claims that "initially arose in a state-court proceeding, long before [the debtor] filed for bankruptcy . . . did not 'arise under' or 'arise in' a title 11 proceeding." ***Wachovia Bank, N.A. v. Carroll***, 2009 U.S. Dist. LEXIS 10175, at *4 (M.D. Ala. Feb. 10, 2009); *see also* ***Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)***, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (finding that "an action seeking damages for pre-petition breaches of pre-petition contracts and for pre-petition tortious conduct" was "a non-core proceeding which neither arises in nor under title 11"). In such cases, the causes of action obviously "could (and in fact did) exist absent [the debtor's] bankruptcy filing." ***In re Legal Xtranet, Inc.***, 453 B.R. at 709. In this case, Plaintiffs initiated purely state-law claims against Debtors in a state-court proceeding in October 2009, long before Debtors filed for bankruptcy in July 2011. As the court put it in ***Wachovia Bank***, the State Court Lawsuit "could (and in fact did) exist" outside of bankruptcy. Therefore, the Court does not have "arising in" jurisdiction.

"Prior to confirmation of a plan of reorganization, 'related to' jurisdiction exists if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." ***In re Legal Xtranet, Inc.***, 453 B.R. at 704. Section 1334's reference to matters "related to" bankruptcy cases "is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same

forum. *In re Zale Corp*, 62 F.3d 746, 752 (5th Cir. 1995). Here, Plaintiffs brought tort, contract, and other claims against Debtors that proceeded for almost two years in state court before Debtors filed for bankruptcy. Were it not for Debtors' bankruptcy, the proceeding would have continued to be a "stand-alone lawsuit" in state court. Given that Debtors have filed for bankruptcy, however, the lawsuit could "conceivably" have an effect on the administration of the bankruptcy estate. While Plaintiffs currently plan to non-suit Debtors once the case is remanded to state court, in which case the estate would not be affected, at present, Debtors are still a party to this litigation.[8] Therefore, at present, this Court has "related to" jurisdiction over this proceeding.

## II. The proceeding does not involve any core issues as defined by 28 U.S.C. § 157.

Once the court determines that it has subject matter jurisdiction, the next step is to determine if the claims are core or non-core. *In re Legal Xtranet, Inc.*, 453 B.R. at 706. In doing so, "courts first look to the language of 28 U.S.C. § 157, which sets forth a non-exclusive list of proceedings that are core." *Id.* Next, courts engage in a two-step inquiry whereby "proceedings that arise under title 11 or arise in cases under title 11 are deemed 'core' matters; while civil proceedings that are related to a title 11 case are deemed 'non-core' matters." *Id* (citing *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009)); *see also In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). In this case, none of the causes of action asserted in the State Court Lawsuit are among those specified in § 157(b). In addition, as previously stated, the State Court Lawsuit does not consist of any claims "arising in" or "arising under" title 11. The claims alleged in the State Court Lawsuit are, at most, "related to" Debtors' bankruptcy case. Therefore, the claims are non-core.

---

[8] *See Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 120 (Bankr. D.N.J. 2003) (finding that pre-petition state law tortious interference and breach of contract claims" asserted against the debtor were "related to" debtor's chapter 11 case).

LTIC objects to remand on the grounds that "core" issues remain.  LTIC states that "Plaintiffs' assertion against the Debtors of Common Law Fraud/ Fraud in a Real Estate Transaction is a core proceeding under 28 U.S.C. 157(b)(2)(H) as it is a proceeding to determine, avoid, or recover fraudulent conveyances."  (Docket no. 11,. at 5-6.)  Similarly, LTIC asserts that Debtors' "fraudulent act or omission . . . is a core issue under 28 U.S.C. 157(b)(2)(H)."  (*Id.* at 7.)

LTIC correctly states that proceedings to determine, avoid or recover "fraudulent conveyances" are core proceedings pursuant to 28 U.S.C. § 157(b).  Plaintiffs' claim for common law "fraud," however, does not constitute such a proceeding.  A proceeding to avoid a "fraudulent conveyance" is authorized under two sections of the Bankruptcy Code: 11 U.S.C. §§ 548 and 544(b).  "Section 548 specifically authorizes the trustee to avoid any transfer of an interest of the debtor that was 'made or incurred on or within one year before the date of the filing of the [bankruptcy] petition' if the debtor 'made such transfer . . . with actual intent to hinder, delay or defraud [any creditor].'"  *In re Mankin*, 823 F.2d 1296, 1298 (9th Cir. 1987) (citing 11 U.S.C.A. § 548(a)(1)).  "Section 544(b) gives to the trustee the power to avoid any conveyances which an unsecured creditor could have avoided under applicable state law."  *Id.* (citing 11 U.S.C.A. § 544(b)).  Fraudulent conveyance actions arising under §§ 548 or 544(b) are "core" proceedings.  *See id.*; *In re Gandy*, 299 F.3d 489, 496-97 (5th Cir. 2002) (finding that debtor-in-possession's §544(b) claim to avoid transfers of her own ownership interests under the Texas Uniform Transfer Act[9] was a "core" proceeding).

In this case, Plaintiffs do not assert a cause of action under § 548 or § 544(b).  In fact, Plaintiffs do not even assert a claim for fraudulent transfer under the applicable Texas law. Rather, Plaintiffs assert a claim for "Common Law Fraud/ Fraud in a Real Estate Transaction,"

---

[9] TEX. BUS. & COM. CODE ANN. § 24.001.

alleging fraudulent acts or omissions in the course of a real estate transaction that occurred more than three years before Debtors filed for bankruptcy. It appears that LTIC mistakenly conflates "fraud" (a common law cause of action arising in tort) with "fraudulent conveyance" (a statutory cause of action arising under §§ 548 or 544(b)). The latter is expressly recognized in 28 U.S.C. § 157(b)(H) as a core proceeding; the former is not.

### III.   Factors 1, 2, 4, 5, 6, 7, 8, 11, 12, and 13 all weigh in favor of remand.

Having established that this Court has jurisdiction over this proceeding pursuant to § 1334 and that each of the claims in this case is non-core, the Court now turns to the fourteen enumerated factors listed above that courts generally consider in order to determine whether remand is appropriate. For the reasons stated below, the Court finds that factors 1, 2, 4, 5, 6, 7, 8, 11, 12, and 13 all weigh in favor of granting the Joint Motion to Remand.

First, as previously noted, while it is "conceivable" that the proceeding could have an effect on the administration of Debtors' estate given that Debtors are currently parties to the litigation, Plaintiffs indicated in their Joint Motion to Remand that they intend to non-suit Debtors once the proceeding is remanded to state court, leaving only non-debtor parties (factor 12). Therefore, it cannot be said that Debtors' estate would be negatively, or positively, affected by remand (factor 1). In addition, the only jurisdictional basis this Court has over the proceeding is "related to" jurisdiction under § 1334, and even that would be taken away if Plaintiffs non-suit Debtors (factor 5). Moreover, Plaintiffs have demanded a jury on all claims asserted and, even if it were within the Court's authority to conduct a jury trial on purely non-core, state-law causes of action, there has been no indication that the parties would consent to a jury trial in the bankruptcy court (factor 11).

The proceeding consists only of state-law claims; it is not in any way related to the bankruptcy case; and it does not involve any core issues (factors 2, 6, 7, 8).  The State Court Lawsuit commenced in October 2009 and proceeded in state court for nearly two years before Debtors filed for bankruptcy in July 2011 (factor 4).  Discovery was completed, and Debtor, Frank Johnson, was deposed.  The case, therefore, appears to be ready for trial, and no party has indicated that there will be a significant delay in proceeding to trial in the state court. Furthermore, in the interest of comity the state court is better suited to adjudicate the state-law claims asserted (factor 13).

Essentially, the only argument LTIC presents in opposition to remand is that LTIC would be "unfairly prejudiced."  (Docket no. 11, at 8.)  The Court disagrees.  Regardless of whether the Court remands the proceeding to state court, LTIC has no recourse to assert liability against Debtors because, as previously stated, the allowed time for asserting claims against Debtors has passed.  Furthermore, as noted below, nothing prevents LTIC from refiling its Motion to Designate in state court once the case is remanded.  Therefore, this Court's decision to remand the proceeding does not prejudice LTIC.

In sum, given that the overwhelming majority of factors favor remand, the Court, therefore, finds that the Joint Motion to Remand should be GRANTED.

### IV.  Pleadings filed subsequent to the Joint Motion to Remand are now moot.

Procedurally, as previously stated, the Motion to Dismiss (docket no. 9), Motion to Designate (docket no. 10), and Crossclaim (docket no. 17) filed on behalf of LTIC subsequent to the Joint Motion to Remand did not factor into this Court's analysis in determining whether remand should be granted.  At this stage, however, given this Court's finding that remand of this proceeding is appropriate, the Court now finds that the pleadings filed subsequent to the Motion

to Remand would be more appropriately considered by the state court as well. Accordingly, this Court declines to rule on the subsequently filed pleadings.[10]

With regard to the Motion to Designate in particular, notwithstanding this Court's indication at the remand hearing that it would consider the Motion in light of the Motion to Remand, after having further reviewed the matter and the relevant case law at this stage, the Court now declines to rule on the Motion. At the hearing, LTIC requested that this Court grant the Motion to Designate Debtors as responsible third parties under Chapter 33 of the Texas Civil Practice and Remedies Code in hopes that the designation would be binding on the state court once the matter is remanded. In light of the minimal jurisdiction this Court retains over this proceeding, the overwhelming factors that favor remand of this proceeding to the state court, and the nuanced state-law statutory scheme implicated by the Motion to Designate, the Court finds, in the interests of comity and respect for state law, that it should defer to the state court for resolution of this Motion as well. The Court notes that it sees no reason why LTIC cannot refile its Motion to Designate in the state court once the proceeding is remanded, given that designation as a responsible third party is neither precluded by any applicable state-law statute of limitations nor by the automatic stay in the bankruptcy case.[11]

---

[10] *See* "***Special Value Continuation Partners***, 2011 WL 5593058, at *7-8 n.15 (noting that the court "may, in its discretion, decline from hearing" a particular proceeding pursuant to 28 U.S.C. § 1334(c)(1), which provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11").

[11] *See **Flack v. Hanke***, 334 S.W.3d 251, 260 (Tex. App. 2010) ("[S]ection 33.004 provides that a properly designated responsible third party may be joined regardless of limitations"); ***Bueno v. Cott Beverages, Inc.***, 2005 WL 647026, *2 (W.D. Tex. Feb. 8, 2005) ("[S]ince the 2003 amendments, responsible third parties are now *designated,* not joined. Further, responsible third parties are no longer limited to those who are responsible to the claimant for some or all of the damages sought against the defendant and a defendant may now designate as a responsible third party one who could not be liable to plaintiff, whose identity is unknown, or who is not even subject to the court's jurisdiction.") (emphasis in original).

With regard to the Counterclaim, the Court also notes, however, that notwithstanding its ability to request designation of Debtors as responsible third parties, LTIC will be barred from seeking any recourse against Debtors for damages or liability by way of a cross-claim or otherwise, whether in bankruptcy court or state court, just as LTIC acknowledges it would be barred from joining Debtors as third parties into the underlying lawsuit due to the automatic stay and the expiration of the claim bar date.  Moreover, the Court finds that its decision to decline from ruling on the subsequently filed Motion to Designate and the Counterclaim does not unfairly prejudice LTIC.  At the hearing, LTIC acknowledged that they may have been able to file a cross-claim against Debtors in state court, but did not do so.  Furthermore, LTIC does not rebut Plaintiffs' assertion that LTIC received timely notice of the deadline to file a claim the bankruptcy court, but made no effort to file a proof of claim or an adversary complaint against Debtors (*see* docket no. 14, at 2).  In their pleadings, LTIC also acknowledged that it could have filed a motion to designate Debtors as responsible third parties in the state court, but chose not to do so because they did not "need to" as long as Debtors were a party to the suit (docket no. 10, at 3).  The fact that LTIC waited too long to act and is now without recourse does not seem to be unfair prejudice.[12]  Moreover, this would be the case whether this Court decided to keep the matter in bankruptcy court or appropriately remand the proceeding to the state court.

For the foregoing reasons, this Court declines to rule on the subsequently filed pleadings, including the Motion to Dismiss, the Motion to Designate, and the Counterclaim and, accordingly, finds that the pleadings should be DISMISSED AS MOOT without prejudice to refiling in the state court.

---

[12] Indeed, Texas courts have made similar findings.  *See, e.g.*, **In re Unitec Elevator Services Co.**, 178 S.W.3d 53, 59 (Tex. App. 2005) (finding that trial court did not abuse its discretion in denying petitioners late-filed motion to designate where "relators waited over 18 months after plaintiffs named Centerpoint as a defendant to seek leave to designate Centerpoint as a responsible third party, and relators knew that plaintiffs could non-suit their claims at any time").

**CONCLUSION**

For the foregoing reasons, the Court finds that the Joint Motion for Remand (docket no. 5) should be GRANTED and that the subsequently filed Motion to Dismiss (docket no. 9), Motion to Designate (docket no. 10), and Crossclaim (docket no. 17) should be DISMISSED AS MOOT.

IT IS SO ORDERED.

# # #